IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL DIMEZZA,

    Plaintiff,

vs.                                                                                                                        No. CIV 99-766 MV/LFG

FIRST USA BANK INC., NORTH AMERICAN
CAPITAL CORPORATION d/b/a in New Mexico
as NACC CORPORATION, EQUIFAX CREDIT
INFORMATION SERVICES, INC., EXPERIAN
INFORMATION SOLUTIONS, INC. and
CREDIT BUREAU OF ESPANOLA, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court upon a Motion to Dismiss for Failure to State a Claim by Defendant NACC Corporation ("NACC")[1], filed October 5, 1999 **[Doc. No. 26]**. The Court, having considered the motion, all filed documents, relevant law, and being otherwise fully-informed, finds that the motion is not well taken and will be **DENIED**.

### BACKGROUND

Plaintiff Michael DiMezza claims to be the victim of identity theft. Mr. DiMezza applied for and was denied a credit card from First USA in 1997. Mr. DiMezza learned that another person

---

[1] It should be noted that Plaintiff has stipulated to the dismissal of all claims against Defendant First USA Bank, Inc. in addition to all claims against Defendants Equifax Credit Information Services, Inc. and Credit Bureau of Espanola, Inc. as of the date of this order. For this reason, this Memorandum, Opinion and Order is relevant only to NACC.

opened a credit card account and incurred a debt under the name "Nick DiMezza" with his social security number but a different address. Shortly after this discovery, Mr. DiMezza sent a letter to First USA informing it that someone had stolen his identity, disputing that he was Nick DiMezza, and along with the letter sent his birth certificate, notarized signature, passport and social security card. Sometime later, First USA sold the account to NACC for collection. Mr. DiMezza continued to dispute the debt with NACC with at least four letters during 1997 and 1998. Mr. DiMezza claims that NACC and First USA failed to investigate his dispute, failed to review all relevant information provided by him and failed to notify consumer reporting agencies that information about the debt was inaccurate, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b). Mr. DiMezza also claims that, despite his continued communications, the credit reporting agencies, Equifax Credit Information Services, Inc., Experian Information Solutions, Inc. and Credit Bureau of Espanola, Inc., refuse to correct information contained in his credit report in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681c(f), 1681e and 1681i.

NACC brings this motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. NACC argues that Mr. Dimezza has no cause of action under the Fair Credit Reporting Act, §1681s-2(b) because the duties articulated in the section are owed to consumer reporting agencies and not to individual consumers. NACC alternatively argues that even if the duties articulated in the Fair Credit Reporting Act, §1681s-2(b) are owed to consumers, they are triggered only upon receipt of a notice of claim by the furnisher of information from the consumer reporting agency.

**LEGAL STANDARD**

A court may not dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief. *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957)*; H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989). When considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## ANALYSIS

Congress passed the Fair Credit Reporting Act in 1968 to establish "reasonable procedures" for "meeting the [credit reporting] needs of commerce" and the banking industry in a "manner that is fair and equitable to the consumer, with regard to the confidentiality, accuracy relevancy and proper utilization of such information...." Fair Credit Reporting Act, 15 U.S.C. § 1681 (1968). Section 1681s-2 of the Fair Credit Reporting Act generally defines the duties of furnishers of information within the Fair Credit Reporting Act. While the term "furnisher of information" is not explicitly defined by the act, the court in *Carney v. Experian Information Solutions, Inc.*, 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999), defined it as an entity "which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies such as Experian, Equifax,

3

MCCA, and Trans Union." Subsection 1682s-2(a) requires furnishers of information to provide accurate information to consumer reporting agencies while §1682s-2(b) investigate and report incomplete or inaccurate information to consumer reporting agencies upon notice of a dispute.

Subsections 1681n(c) and 1681*o*(b) provide a private right of action for the consumer against "any person" for any willful noncompliance or negligent noncompliance with the Fair Credit Reporting Act. It is without doubt, and agreed by the parties, that §1681s-2(d) under the subtitle defining the duties of furnishers of information, by its language, exclusively limits enforcement of the accurate information provisions under §1681s-2(a) to federal and state officers thus precluding any action under sections 1681n and 1681*o*. The question remaining is whether Mr. DiMezza, a consumer, can enforce the investigation and reporting duties described by §1681s-2(b).

When a court undertakes a statutory analysis, the constitutional principles of the separation of powers require the court to begin with the plain meaning. *See* Abner J. Mikva and Eric Lane, An Introduction to Statutory Analysis and the Legislative Process 23-24 (1997) (explaining that the plain meaning rule is the constitutionally compelled starting place for any statutory construction and that other rules of interpretation are only applicable when the plain meaning fails to provide the answer). The same principle also compels the Court to give effect to the legislature's purpose in passing the law. Here, both the plain meaning and the legislative purpose lead to the single conclusion that a consumer has a private right of action against the furnisher of information for violations of §1681s-2(b).

Under §1681s-2(b), upon receiving notice of a dispute from a consumer reporting agency, the furnisher of information must:

(A)     conduct an investigation with respect to the disputed information;

> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency; and
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

The furnisher of information must complete these acts within the prescribed time limit. 15 U.S.C. §1681s-2(b)(2). NACC argues that the title of §1681s-2 which reads, "Responsibilities of furnishers of information to consumer reporting agencies" plainly describes a duty to consumer reporting agencies only and precludes the notion that the same duty is owed to the consumer. However, as Mr. DiMezza correctly points out, Congress explicitly forbids us from relying on captions in the Fair Credit Reporting Act to discern legislative intent noting that they are intended solely as aids to convenient reference. *See* Pub. L. 90-321, § 502 (May 29, 1968), 82 Stat. 146, 147, *reported as a note following* 15 U.S.C. § 1601.

The civil liability sections, 15 U.S.C. § 1681n and 1681*o,* explicitly provide a private right of action for consumers wishing to enforce any provision of the Fair Credit Reporting Act against "any person" who either "willfully fails to comply" or is "negligent in failing to comply." Absent any explicit limitation, the plain language of 15 U.S.C. §§ 1681n, 1681*o,* 1681s-2(b) and (c) provide a private right of action for a consumer against furnishers of information who have willfully or negligently failed to perform their duties upon notice of a dispute. Furthermore, the negative inference of explicitly precluding a consumer's right of action for violations of § 1681s-2(a) is that they are preserved in § 1681s-2(b). Accordingly, the plain language of the Fair Credit Reporting Act compels the conclusion that there is a private right of action for consumers to enforce the investigation and reporting duties imposed on furnishers of information. This interpretation is in accord with the recent

5

opinion in *Campbell v. Baldwin*, 2000 U.S. Dist. LEXIS 3379, *4 (E.D. Tex 2000) holding that individuals who violate subsection (b) of 15 U.S.C. § 1681s-2 are not exempted from civil liability.

The legislative history of the 1996 amendments to the Fair Credit Reporting Act also supports the plain language interpretation and demonstrates a legislative purpose to give consumers a right of action against furnishers of information. Before 1996, The Fair Credit Reporting Act did not impose any requirements on those who furnished information to consumer reporting agencies. S. Rep. No. 104-185, at 49 (1995). The 1996 amendment included new provisions imposing duties on the furnishers of information and amended sections 1681n and 1681*o* from previously imposing liability on only "any consumer reporting agency or user of information" to "any person." *See id.* at 48; 15 U.S.C. §§ 1681n and *o*, *historical and statutory notes*. The changes to the civil liability sections reflected the new broader category of those may be liable for violations. The Senate Committee on Banking, Housing and Urban Affairs was fully aware of concerns raised by furnishers of information that the amendments to the Fair Credit Reporting Act would "result in unwarranted litigation" by consumers. S. Rep. No. 104-185, at 49. Nonetheless, the Committee wished to protect consumers who had been wronged. *Id.* The Committee addressed the fears of the furnishers of information by allowing "the prevailing party may recover reasonable attorney's fees on a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with a civil liability action under FCRA was filed in bad faith or for purposes of harassment." *See id.*; 15 U.S.C. §§ 1681n(c) and 1681*o*(b). The legislative intent of the amendments was clearly to provide civil liability against furnishers of information for violations of 15 U.S.C. § 1681s-2(b), balancing the goal of consumer protection with the danger of harassment with the provisions for attorney's fees.

For its arguments, NACC relies on *Carney v. Experian Information Solutions, Inc.*, 57 F.

Supp. 2d 496 (W.D. Tenn. 1999), a case nearly identical to Mr. Dimezza's where the court held that a consumer had no private right of action against furnishers of information. The Court respectfully disagrees with the Tennessee court's analysis of the relevant provisions of the Fair Credit Reporting Act. The *Carney* court neglected the plain meaning rule when it concluded that "the provisions for civil liability set forth in 15 U.S.C. §§ 1681n and 1681*o* do not apply to any violation of § 1681s-2." *Carney*, 57 F. Supp. 2d at 502 *citing* 15 U.S.C. § 1681s-2(c). The provision the court cites *actually* reads, "Sections 1681n and 1681*o* do not apply to any failure to comply with subsection (a) of this section...." 15 U.S.C. § 1681s-2(c). By its plain language, the limitation only applies to subsection (a) and the *Carney* court's extension of the limitation to subsection (b) is baffling. As the Court has already noted, sections 1681n and 1681*o* explicitly provide a right of action against "any person" who willfully or negligently fails to comply with "any requirement" imposed in the Fair Credit Reporting Act.

Finally, NACC's argument that Mr. DiMezza fails to state a claim by failing to allege received notice from a consumer reporting agency is without merit. Paragraph 14 of Mr. DiMezza's September 16, 1999 amended complaint states, "[i]n addition to receiving notices of dispute of this debt from Mr. DiMezza, both Defendants Experian and Equifax notified NACC and First USA of his dispute, pursuant to 15 U.S.C. § 1681i(a)(2)." The amended complaint sufficiently alleges that NACC actually did, or should have, received notice from a consumer reporting agency and cures any defect that may have been in the original complaint.

The Court finds that the plain language and the legislative history and purpose of §1681s-2(b), §1681n and §1681*o* provide a private right of action for consumers such as Mr. DiMezza and he has sufficiently alleged all the elements of the claim in his complaint.

7

## CONCLUSION

**IT IS THEREFORE ORDERED** that The Motion to Dismiss for Failure to State a Claim by Defendants First USA Bank and NACC filed October 5, 1999 **[Doc. No. 26]** is hereby **DENIED.**

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

**Plaintiff's Attorneys**
Richard N. Feferman
Susan Warren

**Defendants' Attorneys**
Nathan Mann
GALLAGHER, CASADOS & MANN

Julie J. Vargas
HUNT, REECER & DAVIS

Holger Besch
JONES, DAY, REAVIS & POGUE